## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CAIT CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-825-D |
| | ) | |
| JOSEPH HEDDERMAN, an individual, and | ) | |
| P.D. TAYLOR, Sheriff of Oklahoma County, | ) | |
| in his Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a Motion to Dismiss filed by Joseph Hedderman [Doc. No. 15] and a Motion to Dismiss filed by Sheriff P.D. Taylor in his Official Capacity [Doc. No. 14]. Plaintiff has filed a Response in Opposition to each Motion [Doc. Nos. 17, 18] and Defendants have filed a combined Reply [Doc. No. 19]. The Court previously granted Plaintiff permission to file a surreply [Doc. No. 21] and Plaintiff has done so [Doc. No. 22]. The matter is now at issue.

## BACKGROUND

On April 7, 2019, after receiving reports that Plaintiff was acting in a strange and erratic manner, Oklahoma City police officers transported Plaintiff to St. Anthony's hospital where she was involuntarily admitted. Amended Complaint [Doc. No. 12] ¶¶ 9-16. Plaintiff was discharged the same day but continued to exhibit signs of mental instability. *Id.* at ¶¶ 17-19. Plaintiff refused to leave the hospital grounds and, following a

physical altercation with police officers, was booked into the Oklahoma County Detention Center on April 8, 2019. *Id.* at ¶¶ 20-21.

Because of her mental state, Plaintiff was housed in an observation unit. *Id.* at ¶ 22. Later that day, the Oklahoma County Detention Center staff attempted to release Plaintiff from custody but she apparently refused or was unable to comply due to her mental health crisis. *Id.* at ¶¶ 25-27. Although Plaintiff posed no threat to herself or others while secured in her cell, the jail staff called in additional assistance to physically remove her from the unit. *Id.* at ¶¶ 27-28. As a result of her ongoing mental health crisis, Plaintiff ignored the commands issued by the jail staff and, after the cell door was open, began to walk towards the jail staff. *Id.* at ¶¶ 29-31. At this point, Defendant Hedderman, a jail supervisor, fired a pepper-gel gun at close proximity directly into Plaintiff's face and then kicked her in the chest. *Id.* at ¶ 31. Pepper-gel guns of the type used by Mr. Hedderman are not designed to be fired at close range due to the high velocity at which the projectiles are launched and the potential for serious injury. *Id.* at ¶ 32.

Plaintiff was treated for the impact caused by the pepper-gel gun and then transferred back to St. Anthony's hospital for treatment of her mental health crisis. *Id.* at ¶ 33. She was eventually transferred to another hospital for further mental health treatment, where she remained for nearly a month. *Id.* at ¶ 34. As for Mr. Hedderman, an investigation of this incident concluded that he used unreasonable force when he shot Plaintiff and when he kicked her in the chest. *Id.* at ¶ 37. Sheriff Taylor terminated Defendant Hedderman's employment and Defendant Hedderman was arrested on April 12, 2020 for assault and battery and assault and battery with a dangerous weapon. *Id.* at ¶ 38.

Relying on these factual allegations, Plaintiff brings claims under 42 U.S.C. § 1983 for excessive force and a state-created danger. Plaintiff also asserts state law claims for assault and battery, intentional infliction of emotional distress, negligence and cruel and unusual punishment in violation of the Oklahoma Constitution. She seeks punitive damages on her state and federal claims.

Sheriff Taylor, who has been sued in his official capacity only,[1] moves for dismissal under Fed. R. Civ. P. 12(b)(6), contending that Plaintiff has failed to sufficiently plead her claims and that the County is immune from liability as to the state law claims. Mr. Hedderman similarly contends that Plaintiff has failed to state a claim but additionally argues that he is entitled to qualified immunity on any federal claims and is immune from liability on any state law claims because he was acting within the scope of his employment.

---

[1] The caption of Plaintiff's Amended Complaint provides that Sheriff Taylor is sued "in his Official Capacity." Claims against Sheriff Taylor in his official capacity are simply another way of bringing claims against the entity he represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity … is the same as bringing a suit against the county."). Although Plaintiff sued Sheriff Taylor in his official capacity only, she has titled her response brief as a "Response in Opposition to Motion to Dismiss Amended Complaint by Defendant P.D. Taylor in his Individual Capacity as Sheriff of Oklahoma County" and included arguments that are more appropriately directed towards individual capacity claims. Plaintiff cannot, however, amend her pleading by adding new factual allegations or claims in her response brief. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established…that in determining whether to grant a motion to dismiss, the district court… [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").

## STANDARD OF DECISION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a pleading "does not need detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is not, however, required to prove his case at the pleading stage. *Id.* at 570. Instead, he must only plead facts sufficient to "nudge[ ] [his] claims across the line from conceivable to plausible." *Id*. Further, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## DISCUSSION

### A.  State-created danger claim under 42 U.S.C. § 1983

Generally, state actors are "only liable under the Due Process Clause for their own acts and not for private violence." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). There are, however, "two recognized exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory." *Id.* The special relationship doctrine makes a state actor liable for the private violence of third parties if the state and the plaintiff have entered into a special custodial relationship, such as through incarceration or

institutionalization. *Id.*; *see also Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998). When a custodial relationship is lacking, the state-created danger theory makes a state actor liable for the private violence of third parties if the state actor is responsible for creating the danger that harmed the individual. *Id.*

Here, Plaintiff's Amended Complaint lists her sixth claim[2] as one for "State-Created Danger under 42 U.S.C.A. § 1983" and alleges that Sheriff Taylor's jail policies and customs created the situation which gave rise to Mr. Hedderman's use of force. Despite relying on the danger creation theory in her Amended Complaint, Plaintiff's response brief argues that she actually intended to invoke both the special relationship doctrine and the danger creation theory as grounds for her claim. Ignoring for the moment that Plaintiff cannot amend her pleadings through her response brief, neither of these exceptions are applicable because she was not injured by private violence.

Both the special relationship doctrine and the danger creation theory are mechanisms by which a plaintiff can impose liability on a state official for violent acts committed by a private party. *Id.* Thus, these doctrines simply "do[] not apply when the injury occurs due to the action of another state actor." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006). It is not necessary to invoke these exceptions when the state actor has caused the harm "because the state actor directly responsible for the deprivation of life, liberty, or property may be held personally liable under § 1983." *Gray v. Univ. of Colorado*

---

[2] In numbering the claims, the Amended Complaint skips from claim three to claim six. To avoid confusion, the Court will adopt the same numbering that is used in the Amended Complaint.

*Hosp. Auth.*, 672 F.3d 909, 928 (10th Cir. 2012).

Plaintiff alleges that Sheriff Taylor's policies created a situation that caused her to be injured by Mr. Hedderman's actions and that Sheriff Taylor and Mr. Hedderman acted under color of law at the time of the incident. Am Compl. ¶ 74. Her injuries, then, are the result of actions taken by state actors and neither the special relationship doctrine nor the danger creation theory are applicable. Further, Plaintiff's argument that Mr. Hedderman's action may be considered "private violence" if he is found to have acted outside the scope of his employment is misplaced. Even assuming his actions were outside the scope of his employment, the special relationship and danger creation exceptions would not apply because Plaintiff could still bring a § 1983 action directly against the state actors responsible for her injuries. *Gray,* 672 F.3d at 928. Of course, "[w]hether other state actors further down the chain of causation also may be liable poses separate questions of personal and/or supervisory liability." *Id.*

An absence of private violence is not, however, the only barrier standing in the way of Plaintiff's claim. As previously noted, Plaintiff's Amended Complaint failed to invoke the special relationship doctrine and she cannot revise her pleading through arguments raised in her response brief. *See Jojola*, 55 F.3d at 494. As for the claim she did raise, the danger creation theory is inapplicable because it "applies only in the absence of a custodial relationship between the victim and the State," *Gray*, 672 F.3d at 923, a situation clearly not present here given that Plaintiff was detained at the jail at the time of the incident. Plaintiff's sixth claim for relief is therefore dismissed without prejudice.

**B.  Excessive force claim under 42 U.S.C. § 1983**

Plaintiff's seventh claim seeks relief under 42 U.S.C. § 1983 for excessive force. The Fourteenth Amendment's Due Process Clause governs claims of excessive force brought by a pretrial detainee.[3] To succeed on an excessive force claim under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Whether a defendant's actions were objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts "must make this determination from the perspective of a reasonable officer on the scene" and "account for the 'legitimate interests

---

[3]A pretrial detainee is "one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)) (alterations in original). However, "the Fourth Amendment, not the Fourteenth, governs excessive force claims arising from 'treatment of [an] arrestee detained without a warrant' and 'prior to any probable cause hearing.'" *Id.* (quoting *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991) (emphasis in original). Although not entirely clear from the Amended Complaint, it appears that Plaintiff's excessive force claim is based on conduct that occurred after her arrest and transport to the jail facility, but without a warrant and prior to any probable cause hearing. If so, she would not be a pretrial detainee for purposes of her excessive force claim. However, because the parties characterize her as a pretrial detainee and rely on the Fourteenth Amendment, and the Tenth Circuit recently treated a plaintiff in a similar situation as a pretrial detainee, the Court will apply the Fourteenth Amendment standard. *See Rowell v. Bd. of Cty. Commissioners of Muskogee Cty.,* 978 F.3d 1165, 1171 (10th Cir. 2020) (describing plaintiff as "a pretrial detainee" when the alleged excessive force occurred while he was being processed into the jail following his arrest for public intoxication). In any event, the Court would reach the same conclusions regardless of whether the Fourteenth or Fourth Amendment standard applies. *See McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (explaining that "the same objective standard now applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment.").

that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (citation omitted).

The excessive force claim against Sheriff Taylor is easily dispensed with so the Court will start its analysis there. Plaintiff argues in her response brief that Sheriff Taylor is individually liable under § 1983 for Mr. Hedderman's use of force as a result of his supervisory responsibilities. But as previously explained, Plaintiff has sued Sheriff Taylor in his official capacity only and official capacity suits are simply another way of pleading claims against the entity the defendant represents, which in this case is the County. *See Beggs*, 563 F.3d at 1091. To succeed on a § 1983 claim against a local government entity, Plaintiff must show that the entity's own policy or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). The entity "cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691.

Here, the Amended Complaint includes several legal conclusions stating that the use of force or Plaintiff's injuries would not have occurred "[w]ithout Defendant Sheriff Taylor's policies and customs," but fails to include any factual allegations showing that a County policy or custom caused the constitutional deprivation. For example, Plaintiff does not plead facts showing that other individuals were subjected to similar misconduct, that a formal decision by a policymaker authorized the type of force used, or that an identified deficiency in training or supervision is responsible for a constitutional violation. Plaintiff offers nothing more than "labels and conclusions" regarding the County's policies or

customs and she has therefore failed to allege the facts necessary to state a plausible § 1983 claim against Sheriff Taylor in his official capacity. *See Twombly*, 550 U.S. at 555.

Having resolved the federal claims against Sheriff Taylor, the Court now turns to the more challenging analysis: whether the excessive force claim against Mr. Hedderman can proceed. Because Mr. Hedderman has asserted the defense of qualified immunity, "the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (internal quotation marks omitted).

To prevail on the first requirement, Plaintiff must show that the force used – i.e. the use of the pepper-gel gun and the subsequent kick to the chest – was objectively unreasonable. *Kingsley*, 576 U.S. at 396–97. In making this determination, courts should consider factors such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. On balance, these factors favor a finding that Plaintiff has adequately pled a claim for excessive force against Mr. Hedderman.

Plaintiff's allegations state that she posed no threat while secure in her cell but was not compliant with officer's commands at the time they went to release her. Although her failure to comply with verbal commands may justify using some force, the amount of force used here could be seen as excessive. *See Kinglsey,* 576 U.S. at 398 (explaining that a

9

pretrial detainee can prevail on an excessive force claim by showing that the force "is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."). Mr. Hedderman apparently shot Plaintiff – in the face – merely because she walked towards him and was not complying with verbal commands. To gain her compliance, he deployed a weapon that is not intended to be discharged at close range due to the high velocity of the projectiles. He then kicked Plaintiff in the chest even though she was already incapacitated from the pepper-gel shot. The allegations do not show that Mr. Hedderman made any meaningful effort to temper the amount of force used nor that there was a significant security concern given that the officers could simply have closed Plaintiff's cell door. *See Martinez v. New Mexico Dep't of Pub. Safety*, 47 F. App'x 513, 516 (10th Cir. 2002) (unpublished) (use of mace excessive where plaintiff was not compliant but not actively resisting or attempting to flee).

Although Plaintiff does not allege significant physical injuries from the contact, she did require some treatment and suffered increased psychological symptoms as a result of the incident. The allegations do not speak to the specific threat perceived by Mr. Hedderman, but it is significant that Mr. Hedderman was fired and arrested because of his conduct. Even accounting for the deference owed to jail officials who have the difficult task of operating a detention center, Plaintiff's allegations, taken as true and construed in her favor, adequately state a claim that Mr. Hedderman used an objectively unreasonable amount of force.

To overcome the defense of qualified immunity, Plaintiff must additionally show that the defendant's actions violated clearly established law. "The law is clearly established

when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotation and emphasis omitted). Courts must take care not to define clearly established law "at a high level of generality" and should instead determine "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted). Although the Supreme Court has emphasized that specificity is important when defining clearly established law for excessive force claims, *see id.*, the Tenth Circuit has acknowledged that "there will almost never be a previously published opinion involving exactly the same circumstances" in an excessive force case given the "all-things-considered inquiry" that must be undertaken in each case. *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v Katz*, 533 U.S. 194, 202 (2001), modified on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 240-43 (2009). "The key to the analysis is notice—an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights." *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). A case "directly on point" is not necessary, "but existing precedent must have placed the statutory or constitutional question beyond debate."

*Mullenix*, 577 U.S. at 12, (internal quotation and citation omitted). In this regard, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (internal citation omitted).

As alleged in the Amended Complaint,[4] the particular conduct at issue is Mr. Hedderman's deployment of a pepper-gel gun into Plaintiff's face at close range while she was located in a jail cell, and his subsequent kick to Plaintiff's chest after she was incapacitated. The Tenth Circuit has made clear that using less lethal weapons, such as pepper ball guns or pepper spray, on subjects who do not pose an immediate threat to officers can constitute excessive force. For example, in *Buck v. City of Albuquerque*, 549 F.3d 1269, 1291 (10th Cir. 2008), it was clearly established that the deployment of tear gas, pepper spray and non-lethal projectiles on two protesters was an unreasonable use of force where "not one of the suspected crimes charged or uncharged was severe, neither posed a threat to the safety of an officer or others, and neither attempted to flee or evade arrest." In reaching this conclusion, the Tenth Circuit relied on the reasonableness test announced in *Graham v. Connor*, 490 U.S. 386, 388 (1989) and rejected the defendant's argument that the right involved was not defined with the appropriate level of specificity. *Id.* Similarly, in *Fogarty v. Gallegos*, 523 F.3d 1147, 1160-62 (10th Cir. 2008), the Tenth Circuit denied qualified immunity to the defendant officers and found that hitting a

---

[4] Because Mr. Hedderman has raised the qualified immunity defense in the context of a 12(b)(6) motion to dismiss, he is subject to a more challenging standard of decision than would apply on summary judgment and the Court must evaluate the defendant's conduct as alleged in the complaint. *Sayed v. Virginia*, 744 F. App'x 542, 546 (10th Cir. 2018) (unpublished).

protestor with a less lethal projectile was an excessive use of force where the protestor was unarmed, did not attempt to evade arrest, and "presented no immediate threat to anyone's physical safety."

Like the plaintiffs in *Buck* and *Fogarty*, the plaintiff here was unarmed and did not pose an immediate threat to officers while she was secured in her jail cell. Granted, there are allegations that she was not fully compliant with the jail staff's commands due to her mental health status and that she posed a safety risk if removed from the cell. But, at the time the pepper-gel gun was fired at her, she was only "walking" towards the officers and (drawing reasonable factual inferences in her favor) not attempting to flee or attack Mr. Hedderman. In some ways, the force used here is even more egregious than the force involved in *Buck* and *Fogerty* because Plaintiff was shot in the face, at close range, while isolated in a jail cell.

Plaintiff also alleges that Mr. Hedderman kicked her in the chest "after she was incapacitated." Am. Compl. ¶ 37. There can be no doubt that a reasonable officer would appreciate that kicking a detainee who is already incapacitated is an excessive use of force. *See Est. of Booker v. Gomez*, 745 F.3d 405, 428 (10th Cir. 2014) (finding it clearly established that "the use of violent physical force against a criminal suspect or detainee 'who already has been subdued and does not present a danger to himself or others'" is unlawful) (internal citation omitted). Mr. Hedderman seems to recognize as much, as he failed to separately address the reasonableness of the subsequent kick to the chest in his briefing.

Although *Buck* and *Fogarty* are not perfectly analogous to the situation presented

here because Plaintiff was secured in a jail cell and was not fully compliant with the officer's instructions, it is not necessary for there to be a factually identical case. *See McCowan v. Morales*, 945 F.3d 1276, 1287 (10th Cir. 2019) (denying qualified immunity although there was not a "factually identical prior case"). Indeed, "there will almost never be a previously published opinion involving exactly the same circumstances." *Casey*, 509 F.3d at 1284. Like the facts alleged in this case, *Buck* and *Fogarty* both involve the deployment of non-lethal projectiles against a person who did not pose an immediate threat. Thus, these cases make the contours of the right involved – to be free from a violent use of force where the plaintiff is restrained, secured, or not posing an immediate risk – sufficiently clear.

Moreover, the key to the analysis is whether a reasonable officer would be on notice that his conduct was unlawful. *Mullenix,* 577 U.S. at 11; *Saucier*, 533 U.S. at 202; *DeSpain*, 264 F.3d at 979. Mr. Hedderman's termination and arrest following his use of force strongly suggest that a reasonable officer would, and in fact did, appreciate that Mr. Hedderman's use of force was unlawful in the situation he confronted.

The Tenth Circuit case cited by Mr. Hedderman to argue otherwise is inapposite. In *Clark v. Colbert*, 895 F.3d 1258, 1262 (10th Cir. 2018), the Tenth Circuit upheld the use of pepper ball projectiles against a mentally ill man who was standing on his front porch with a knife. Officers had been called to the scene because the man tried to attack his brother with the knife. *Id.* at 1261. The officers deployed the projectiles only after the man refused to drop the knife and made threatening gestures towards the officers. *Id.* at 1262. Unlike in *Clark,* plaintiff was shot at close range while standing unarmed in a jail cell; she

was not shot at a distance while threatening officers with a knife from her own front porch.

Taking Plaintiff's factual allegations as true, and in light of the Tenth Circuit's pronouncements regarding the use of nonlethal projectiles on subjects who do not pose an immediate threat, the Court finds that Mr. Hedderman is not entitled to qualified immunity at this stage.

### C. State law claims

In her first, second, third, and eighth claims, Plaintiff seeks relief under state law for assault and battery, intentional infliction of emotional distress, negligence, and excessive force in violation of Art. II §§ 7 and 9 of the Oklahoma Constitution. All of these claims are subject to the Oklahoma Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151 et seq. ("OGTCA"). *See id.* at § 152(17) (defining "tort" as including constitutional violations); *Barrios v. Haskell County Public Facilities Authority,* 432 P.3d 233 (Okla. 2018) (recognizing that state constitutional torts are now subject to the OGTCA).

Section 155(25) of the OGTCA provides immunity from any claims arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." This is a broad exemption that is intended "to protect the state and political subdivisions from tort liability for loss resulting from the functions of the officers and employees performed in the operation of a penal institution." *Medina v. State*, 871 P.2d 1379, 1383 (Okla. 1993). To the extent Plaintiff brings her state law claims against Sheriff Taylor in his official capacity, § 155(25) grants the County immunity because the claims

all arise from the operation of a jail facility.[5] *See Bosh v. Cherokee Cty. Bldg. Auth.*, 305 P.3d 994, 1000, (Okla. 2013) (recognizing that §155(25) immunized county from assault committed by employee of detention center); *Purvey v. State*, 905 P.2d 770, 771 (Okla. 1995) (recognizing that § 155(25) applied to negligence claim).

Plaintiff may, however, maintain her state law assault and battery and intentional infliction of emotional distress claims against Mr. Hedderman.[6] Ordinarily, under the OGTCA, employees of the state and its political subdivisions are immune from suit for acts taken within the scope of their employment. OKLA. STAT. tit. 51 §153(C); § 163(C). But an employee may be subject to individual liability for actions they take outside the scope of their employment. *Speight v. Presley*, 203 P.3d 173, 176 (Okla. 2008). An employee is within the scope of their employment when they act "in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." OKLA. STAT. tit. 51 § 152(12). Acts that are done in bad faith or in reckless disregard of a person's constitutional rights are outside the scope of employment. *See Houston v. Reich,* 932 F.2d 883, 890 (10th Cir.1991); *Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 537 (Okla. 2003). Importantly, acts that are initially within the scope of employment may at some point move beyond the scope of employment. *Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla.1996) (police officer who

[5] Because Plaintiff's claims are within the scope of §155(25), it is unnecessary to determine whether any other exemptions in the OGTCA would also apply.
[6] To the extent Plaintiff attempts to assert her state constitutional claim against Mr. Hedderman individually, that claim is subject to dismissal because it cannot lie against an individual government employee. *See Washington v. Rogers*, No. CIV-18-1116-D, 2019 WL 5191830, at *4 (W.D. Okla. Oct. 15, 2019).

was acting within the scope of employment in arresting suspect may have exceeded the scope of employment in injuring suspect).

To survive a Rule 12(b)(6) motion, the plaintiff need not prove her case but must only allege facts sufficient to show that she is entitled to relief under the proposed legal theory. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). Here, Plaintiff has alleged that Mr. Hedderman was fired and arrested for shooting Plaintiff with the pepper-gel gun and kicking her in the chest. These facts are sufficient to support a finding that Mr. Hedderman was acting recklessly or not in good faith.[7] Plaintiff has also pled facts sufficient to maintain a claim for intentional infliction of emotional distress because Mr. Hedderman's arrest suggests the conduct was outrageous and Plaintiff's month long stay in a hospital suggests the emotional distress that was exacerbated by the events was severe. *See Durham v. McDonald's Restaurants of Oklahoma, Inc.,* 256 P.3d 64, 66 (Okla. 2011) (requiring outrageous conduct and severe emotion distress to state a claim for intentional infliction of emotional distress under Oklahoma law).

Finally, in her response briefs, Plaintiff requests leave to amend her pleadings to correct any deficiencies. "'Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119,

---

[7] Although Plaintiff alleged that Mr. Hedderman was acting within the scope of his employment, she also pled in the alternative that he was acting outside of the scope of his employment. At this stage of the litigation, a plaintiff has the right to plead alternative theories of recovery. *Taylor v. Chesapeake Operating, Inc.*, No. CIV-18-565-D, 2019 WL 6174944, at *5 (W.D. Okla. Nov. 20, 2019).

1131 (10th Cir. 1994) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1483, at 587 (2d ed. 1990)). However, leave to amend is not automatic and may be properly denied where an amendment would be futile. *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2004). At this stage, the Court cannot conclude that an amendment to correct the deficiencies in her claims against Sheriff Taylor in his official capacity would be futile and Plaintiff is therefore authorized to file an amended complaint.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendant Taylor in his official capacity is GRANTED. Plaintiff's claims against Sheriff Taylor in his official capacity are dismissed without prejudice. The Motion to Dismiss filed by Defendant Hedderman is DENIED. The claims asserted against Defendant Hedderman (claims 1, 2, and 7) survive. Plaintiff's request for leave to amend is also GRANTED. Plaintiff's amended complaint shall be filed no later than 14 days from the date of this Order. Defendant's response shall be filed in accordance with the deadline established by the Federal Rules of Civil Procedure.

**IT IS SO ORDERED** this 26th day of May, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge