**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CAIT CHAPMAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-825-D |
| | ) | |
| JOSEPH HEDDERMAN, an individual, | ) | |
| OKLAHOMA COUNTY SHERIFF TOMMIE | ) | |
| JOHNSON III, in his Official Capacity, | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>ORDER</u>

Defendant Tommie Johnson III brings before the Court a Motion to Dismiss [Doc. No. 42] seeking dismissal pursuant to FED. R. CIV. P. 12(b)(6) of the claims brought against him in his official capacity as Oklahoma County Sheriff. Plaintiff has filed a Response in Opposition [Doc. No. 46] and Sheriff Johnson has replied [Doc. No. 49]. The matter is now at issue.

## BACKGROUND

On April 8, 2019, while in the throes of a mental health crisis, Plaintiff Cait Chapman was arrested and booked into the Oklahoma County Detention Center ("OCDC"). While attempting to release Plaintiff from her cell later that day, Defendant Joseph Hedderman, a jail supervisor, fired a pepper-gel gun at close proximity directly into Plaintiff's face and then kicked her in the chest. Pursuant to 42 U.S.C. § 1983, Plaintiff seeks to hold Oklahoma County, the local governmental entity Sheriff Johnson represents

in his official capacity,[1] liable for this alleged use of excessive force, which she claims was in violation of her constitutional rights.[2]

## STANDARD OF DECISION

A complaint must contain "a short and plain statement...showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "attacked by a Rule 12(b)(6) motion to dismiss…does not need detailed factual allegations," but it does need "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citation omitted). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] The claim against Sheriff Johnson in his official capacity is simply another way of bringing a claim against the entity he represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity…is the same as bringing a suit against the county.").

[2] Plaintiff's Second Amended Complaint [Doc. No. 31] does not identify the source of the constitutional violation. The Fourth Amendment governs excessive force claims brought by arrestees, while the Fourteenth Amendment governs excessive force claims brought by pretrial detainees. *McCowan v. Morales*, 945 F.3d 1276, 1283 n. 6 (10th Cir. 2019). Because "the same objective standard now applies to excessive-force claims brought under either the Fourth or the Fourteenth Amendment," it is unnecessary at this stage for the Court to determine which amendment governs. *Id.*

A plaintiff is not, however, required to prove his case at the pleading stage. *Twombly*, 550 U.S. at 570. Instead, he must only plead facts sufficient to "nudge[ ] [his] claims across the line from conceivable to plausible." *Id*. Further, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## DISCUSSION

To establish liability against a local government entity under § 1983, as Plaintiff seeks to do here, she must show "1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Hinton v. City of Elwood, Kan*., 997 F.2d 774, 782 (10th Cir. 1993). A policy or custom typically takes one the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted). To show the requisite causal link between a policy and a constitutional injury, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v.*

*Brown*, 520 U.S. 397, 404 (1997). Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.*

Plaintiff's Second Amended Complaint[3] claims that her injuries were caused by a custom of failing to provide adequate mental health services to detainees and a failure to properly train OCDC staff on handling mentally ill detainees. To prove the existence of a custom, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). For a failure to train theory, an entity's deliberate indifference to the need for more or different training is typically shown through "the existence of a pattern of tortious conduct." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). However, "[i]n a narrow range of circumstances…deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id.* (internal quotation marks omitted).

Here, Plaintiff supports her claim by pointing to a 2008 letter issued by the Department of Justice ("DOJ"). The letter reported findings from four inspections of the

---

[3] In determining whether Plaintiff has stated a claim, the Court considers only the allegations in Plaintiff's operative pleading and disregards the additional allegations included in Plaintiff's response brief. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well-established…that in determining whether to grant a motion to dismiss, the district court… [is] limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.").

OCDC between 2003 and 2007 which found "dozens of violations" and recommended certain remedial measures. Second Am. Compl. ¶¶ 9-10. Specifically, the letter reported that the OCDC had an "inordinately high number of use of force incidents," offered no mental health services, and lacked adequate mental health staff.[4] *Id.* at ¶ 10-12. Plaintiff further alleges that in the years following the DOJ letter, and up until the time of the incident involving Plaintiff, the OCDC failed to improve conditions at the jail, which resulted in continual deaths and injuries to detainees from alleged excessive force incidents. *Id.* at ¶¶ 13-15. By way of example, Plaintiff notes that in 2018, OCDC staff shot Charlton Cash Chrisman with a pepper-ball projectile at close range while he was experiencing a mental health crisis. *Id.* at ¶¶ 64-70. According to Plaintiff, Sheriff Johnson never properly investigated or abated previous excessive force incidents such as the one involving Mr. Chrisman. *Id.* at ¶ 104.

Plaintiff also asserts that shortly after she was detained at the OCDC, then-current Oklahoma County Sheriff P.D. Taylor publicly stated to the Board of County Commissioners that there were "numerous issues with the OCDC," including understaffing, underfunding, and mismanagement. *Id.* at ¶¶ 14-15. She then specifically claims that at the time of her detention, the OCDC did not have the recommended level of staffing for psychiatrists and the OCDC staff "received incorrect or no training on the handling of mentally ill patients." *Id.* at ¶ 72.

---

[4] Plaintiff has attached a copy of the DOJ letter to her Second Amended Complaint. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits…and documents incorporated into the complaint by reference.").

Taking these allegations as true and construing them in the light most favorable to Plaintiff – as the Court must at the pleading stage – there is enough factual content to draw the reasonable inference that the underlying use of force incident is attributable to a policy or custom of the County. The DOJ's letter plausibly shows that the County was on notice as far back as 2008 that the OCDC both lacked adequate mental health services for inmates and was generating an inordinately high number of use of force incidents. Significantly, the DOJ letter specifically noted that the lack of mental health care and insufficient number of mental health staff could be contributing to the need to use force or restraints against mentally ill detainees. Thus, there is a direct connection between the deficiencies identified in the DOJ letter and the conditions under which Plaintiff alleges she was subjected to an excessive use of force.

Of course, a report describing conditions at the OCDC over a decade ago would not be enough on its own to show a widespread practice existing at the OCDC at the time of this incident. S*ee Turner v. Bd. of Cty. Commissioners of Cty. of Oklahoma*, No. CIV-18-36-SLP, 2019 WL 1997473, at *4 (W.D. Okla. May 6, 2019) (stating that DOJ report from eight years prior was "too remote to support any reasonable inference that those same conditions continued to exist"); *Meadows v. Whetsel*, No. CIV-14-1030-HE, 2015 WL 7016496, at *6 (W.D. Okla. Nov. 10, 2015) (finding that the DOJ report is not "recent enough to be relevant to a determination of whether plaintiff has demonstrated a widespread practice of the use of excessive force."). But Plaintiff does not rely solely on the DOJ letter to make out her claim. Instead, Plaintiff also alleges that the OCDC failed to improve these conditions up until the time of this incident. Assuming the truth of that

allegation, a reasonable inference is that the County consciously chose to ignore some of the very same deficiencies Plaintiff claims contributed to her injuries and that these deficiencies were ongoing and so pervasive as to amount to a custom of the OCDC.[5]

Plaintiff's contention that former Oklahoma County Sheriff Taylor made public statements related to the OCDC's understaffing and mismanagement provides further factual support from which to infer that the County had notice of ongoing risks at the facility. Although Sheriff Taylor's comments occurred shortly after the use of force at issue in this case, he was apparently describing the conditions that were present at the OCDC around the time of Plaintiff's detention. Additionally, and significantly, Plaintiff also alleges that the OCDC lacked adequate staffing levels for mental health providers at the time of this incident and provided incorrect or no training to staff regarding responding to mentally ill detainees. Based on these allegations, it is reasonable to infer that the County was deliberately indifferent to the consequences of its actions (or inaction). Indeed, it is highly predictable that inappropriate levels of force will be used to manage mentally ill detainees when there is both a lack of mental health treatment available and a failure to train staff on responding to mentally ill detainees.

---

[5] In other cases, this Court has dismissed claims or denied summary judgment where the plaintiff relied on the DOJ letter to show an unconstitutional policy or custom of the County. *See Willis v. Oklahoma Cty. Det. Ctr*., No. 18-CV-00323-D, 2019 WL 4409219 (W.D. Okla. Sept. 13, 2019); *O'Carroll v. Oklahoma Bd. of Cty. Comm'rs*, No. CIV-10-232-D, 2012 WL 1072240 (W.D. Okla. Mar. 30, 2012). However, unlike the instant case, in those cases there was no direct correlation between the deficiencies identified in the DOJ report and the circumstances under which the plaintiff was allegedly injured. Further, Plaintiff here does not rely solely on the DOJ report to state a claim but also makes other allegations that, when accepted as true as the Court must, allow the Court to draw the reasonable inference that the County is liable.

Considering the allegations as a whole – that the problems identified in the DOJ letter persist, that the prior sheriff publicly acknowledged problems with the OCDC at the time of the incident, and that the OCDC currently lacks adequate staffing and training related to mentally ill detainees – Plaintiff has done enough to nudge her claim across the line from conceivable to plausible. *See Osborn v. Meitzen,* No. CIV-20-96-SPS, 2020 WL 3800547, at *3 (E.D. Okla. July 6, 2020) (allegation that city failed to train its officers on limits of using vehicle to stop fleeing suspects sufficient to state a claim for municipal liability); *Simpson v. Little,* No. 18-CV-491-GKF-FHM, 2020 WL 33216, at *6 (N.D. Okla. Jan. 2, 2020) (allegation that city failed to train its officers on the appropriate use of force sufficient to state a claim for municipal liability); *Chrisman v. Bd. of Cty. Commissioners of Oklahoma Cty.*, No. CIV-17-1309-D, 2018 WL 4291761, at *7 (W.D. Okla. Sept. 7, 2018) (allegation that sheriff allowed certain detention officers to self-train sufficient to state a claim for municipal liability). Indeed, there can be no doubt that Plaintiff's Second Amended Complaint gives the County fair notice of the claim and the grounds upon which it rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (explaining that "Rule 8(a)(2) still lives" and statement "need only give the defendant fair notice of what the...claim is and the grounds upon which it rests") (internal quotation marks omitted)).

In seeking dismissal, Sheriff Johnson argues that Plaintiff has failed to state a claim for an unconstitutional custom or failure to train because she only identifies, at best, two prior incidents involving a use of force, which is not sufficient to establish a pattern of constitutional violations. It is true that a plaintiff will typically prove an unconstitutional

8

custom or deliberate indifference at the summary judgment stage or trial by offering evidence of similar, pre-existing constitutional violations. *See, e.g., Connick v. Thompson,* 563 U.S. 51, 62 (2011); *Layton v. Bd. of Cty. Comm'rs of Oklahoma Cty.,* 512 F. App'x 861, 871 (10th Cir. 2013) (unpublished). However, at the pleading stage, a plaintiff "need not provide details of the time, place, offender, and precise statement for every incident," so long as the allegations as a whole are sufficient. *See Doe v. Sch. Dist. No. 1, Denver, Colorado,* 970 F.3d 1300, 1312 (10th Cir. 2020) (evaluating adequacy of Title IX claim). Further, as previously noted, a pre-existing pattern of constitutional violations is unnecessary where a violation of federal rights is a highly predictable consequence of the entity's action or inaction. *See Brown,* 520 U.S. at 409.

In *Waller v. City & Cty. of Denver,* 932 F.3d 1277, 1287 (10th Cir. 2019), the Tenth Circuit addressed whether the plaintiff's allegations fell into the narrow range of circumstances where proof of prior constitutional violations was unnecessary to show deliberate indifference. The Court concluded that, given the circumstances of the underlying constitutional violation, proof of more than a single similar incident was required because "[e]ven an untrained law enforcement officer should have been well aware that any use of force in this situation—where a restrained detainee was simply addressing a judge at a hearing in a polite, calm voice—was inappropriate." *Id.* at 1288. The Tenth Circuit further explained that the situation in *Waller* did not "involve technical knowledge or ambiguous 'gray areas' in the law that would make it 'highly predictable' that a deputy sheriff…would need 'additional specified training' to know how to handle the situation correctly." *Id.* In contrast, responding to a detainee who is experiencing an

acute mental health crisis is precisely the type of situation that would benefit from technical knowledge and specific training so that detention staff know how to respond correctly. It cannot be said, as it was in *Waller*, that an untrained detention officer would be aware of the appropriate way to manage a noncompliant, mentally ill detainee in the absence of training. Thus, in this situation, it is not necessary for Plaintiff to identify a series of similar unconstitutional violations to state a claim.

Sheriff Johnson also contends that Plaintiff has failed to provide adequate factual support for certain statements. What Sheriff Johnson is really arguing, however, is that Plaintiff has failed to come forward with evidence proving her allegations. Plaintiff's allegation that OCDC staff receive no training on certain topics is a factual statement that can be proved or disproved with evidence. Likewise, evidence must ultimately be brought to bear regarding Plaintiff's allegations that the OCDC was not properly staffed with mental health providers, that the previous sheriff admitted the OCDC was deficient in certain respects, and that the problems identified in the DOJ letter were never remedied. Properly stating a claim does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, while a "plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face," she is "not required to prove her case at the motion-to-dismiss stage." *Sch. Dist. No. 1*, 970 F.3d at 1311. Further, the Court cannot dismiss Plaintiff's pleading merely because some of the allegations might seem unlikely. *Twombly,* 550 U.S. at 555-556 (explaining that courts must assume "the allegations in the complaint are true (even if doubtful in fact)."). Plaintiff has pled enough

relevant factual information to draw the reasonable inference that the County maintained an unconstitutional custom or was deliberately indifferent to the need for additional training.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendant Tommie Johnson III, in his Official Capacity [Doc. No. 42] is DENIED. This action remains STAYED pursuant to the Court's previous Order of July 30, 2021 [Doc. No. 50].

**IT IS SO ORDERED** this 12th day of October, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge